91 F.3d 155
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Chleora Kay BERGQUIST, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sandra Vee BELISLE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Merton Ernest GREIF, Defendant-Appellant.
 Nos. 95-30249, 95-30250 and 95-30272.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 6, 1996.
Decided July 3, 1996.
 
 1
 Before: GOODWIN and SCHROEDER, Circuit Judges, and LEGGE,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Defendants Chleora Bergquist, Sandra Belisle, and Merton Greif challenge their convictions and sentences on five counts of wire fraud under 18 U.S.C. §§ 2 & 1343, and one count of conspiracy to commit wire fraud under 18 U.S.C. §§ 371 & 1343.
 
 CHALLENGES TO THE CONVICTIONS
 I.
 
 4
 Defendants raise several evidentiary contentions on appeal, which we review for abuse of discretion. See United States v. Manning, 56 F.3d 1188, 1196 (9th Cir.1995). Defendants Bergquist and Belisle argue that the district court, in violation of Fed.R.Evid. §§ 401 & 403, erroneously admitted four Australian victims' testimony about the impact of defendants' behavior on their financial situations. However, the testimony revealed that the victims risked valuable assets on the basis of defendants' representations. This tended to show that the defendants' assertions were of a kind that would reasonably influence a person to part with money or property, an element of wire fraud. See Ninth Cir.Crim.Jury Inst. 8.26C & 8.26A. The district court's careful circumscription of the government's use of this testimony adequately mitigated any unfair prejudice. Thus, the testimony was not inadmissible under either Rules 401 or 403.
 
 
 5
 Defendant Bergquist challenges the admission of FBI Agent Lindsey's testimony on redirect that fraud suspects commonly cooperate with interviewing agents, contending that this testimony constituted improper profile evidence. However, counsel opened the door to this testimony while cross-examining Lindsey. See United States v. Beltran-Rios, 878 F.2d 1208, 1212 (9th Cir.1989). The district court therefore did not abuse its discretion in allowing the contested testimony.
 
 
 6
 Defendant Bergquist argues that the testimony that Dowers did not like or want to associate with her constituted an attack on her character for honesty, and was inadmissible under Fed.R.Evid. 404(a) because she had not yet put into issue her character for truthfulness. Rule 404(a) limits the introduction of character evidence "for the purpose of proving action in conformity therewith on a particular occasion." The government did not elicit the contested testimony to show that Bergquist behaved dishonestly. Instead, it sought to show that Greif was deliberately indifferent to the possible absence of funding, an element of the government's case against him. There is no indication that the government drew attention to Dowers' testimony in its case against Bergquist. In light of the overwhelming evidence of Bergquist's intent to defraud, any error in admitting Dowers' testimony was harmless.
 
 
 7
 Defendant Belisle contends that the district court erred when it allowed the government to conduct cross-examination regarding her 1990 tax return because it did not provide pretrial notice, as required by Fed.R.Evid. 404(b). The government had good cause for not giving pretrial notice; it obtained Belisle's tax return information pursuant to 26 U.S.C. § 6103, which prohibited the prosecution from disclosing Belisle's tax return information absent a court order. The government could not request the court order until after Belisle testified. Thus, under rule 404(b), it was excused from providing pretrial notice.
 
 
 8
 Belisle also argues that Fed.R.Evid. §§ 401 & 403 prohibited the government from questioning her about her failure to file a 1990 tax return or from introducing evidence to that effect. However, Belisle's failure to file a 1990 return was relevant to intent and knowledge, and it impeached her earlier testimony that she believed the money was legitimately earned. Moreover, the danger of unfair prejudice here did not substantially outweigh the probative value of this evidence. The district court did not abuse its discretion in allowing questioning about the 1990 return.
 
 II.
 
 9
 Defendants Belisle and Greif challenge the district court's deliberate indifference instruction on the issue of whether they knew there was no funding source. A deliberate indifference instruction, also known as a Jewell instruction, United States v. Jewell, 532 F.2d 697 (9th Cir.) (en banc), cert. denied, 426 U.S. 951 (1976), is properly given when the defendant remained willfully ignorant of the unlawful nature of his activity after the facts and circumstances would have put any reasonable person on notice that there was a high probability that the undisclosed venture was illegal. United States v. Sanchez-Robles, 927 F.2d 1070, 1074 (9th Cir.1991).
 
 
 10
 Belisle and Greif both contend that the evidence did not support a deliberate indifference instruction. However, there was no evidence that Belisle inquired into Mainstream's funding situation, even after she communicated with numerous Australians who expressed concern about the funding delays and doubt that Bergquist had obtained funding. This, and evidence of Belisle's extensive experience in the lending industry, support a finding that she deliberately remained ignorant about whether funding existed even though the circumstances strongly suggested that it did not. Thus the district court did not abuse its discretion in giving the deliberate indifference instruction for Belisle.
 
 
 11
 The deliberate indifference instruction was also properly given for defendant Greif. There was evidence of his own admission that while the Australian deal was ongoing, he strongly suspected that funding would not materialize. There was no evidence of any serious effort to seek proof that funding existed. He testified that he was not concerned about potential illegalities because he believed that he was not a participant in the Australian deal, and that his portion of the advance fees was simply repayment for services previously rendered on non-Australian projects. The district court did not err in giving the deliberate indifference instruction.
 
 CHALLENGES TO THE SENTENCES
 
 12
 Defendants Bergquist and Belisle contend that the district court erred when it upwardly adjusted their sentences under U.S.S.G. § 3B1.1(c). However, Bergquist had substantial decision-making authority in the scheme; she recruited Greif; and she gave substantive directives to the other participants in the scheme. Belisle was the first of the three defendants to contact the Australians; she recruited Bergquist; she played a crucial organizing and coordinating role; and she received over 50% of the advance fees. The district court's upward adjustments under § 3B1.1(c) were not clearly erroneous. See United States v. Karterman, 60 F.3d 576, 580 (9th Cir.1995).
 
 
 13
 Defendant Greif argues that the district court erred in finding that he was not a minor or minimal participant under U.S.S.G. § 3B1.2. However, Greif allowed Bergquist to use all of his office facilities, gave her access to his trust account, and handled all of the advance fees wired in from Australia. In addition, he provided Dunn & Bradstreet with information to use in its report on Mainstream and drafted the collateral review letter, which played a crucial role in attracting loan applicants. Thus the district court's denial of the requested adjustment under § 3B1.2 was not clearly erroneous. See United States v. Peters, 962 F.2d 1410, 1414 (9th Cir.1992).
 
 
 14
 Defendants Bergquist and Belisle contend that the district court erroneously refused to reduce their sentences for acceptance of responsibility under U.S.S.G. § 3E1.1. However, neither Bergquist nor Belisle point to sufficient evidence in the record showing that they accepted responsibility for their offenses. The district court's refusal to adjust their sentences was not clear error. See Karterman, 60 F.3d at 580.
 
 
 15
 Defendants Belisle and Greif contest the district court's imposition of restitution in the amounts of $2,000 and $49,500 respectively. However, the court's finding that Belisle had a "demonstrated earning ability" sufficient to pay the ordered restitution, and that Greif's financial assets would cover the ordered restitution was amply supported by the record. The district court did not abuse its discretion in ordering restitution. See United States v. Catherine, 55 F.3d 1462, 1465 (9th Cir.1995).
 
 
 16
 Defendants Bergquist and Belisle contend that the district court improperly used the $992,000 in the solicitor's trust account in January 1990 as the intended loss, and as a result, erroneously increased their offense levels by eleven under U.S.S.G. § 2F1.1. This court reviews the district court's factual findings during the sentencing phase for clear error. Karterman, 60 F.3d at 580. Defendants could not have intended for the Australians to lose the money in the solicitor's account because they knew that they did not have the funding for the loans. Moreover, after October 18, they made no attempts to obtain the money in the account. They simply accepted their portion of the non-refundable deposit, which Gordon Rule wired directly into the Westco account. Thus, the defendants did not intend for the Australian victims to lose the money placed in the solicitor's account after October 18, 1989. We must therefore VACATE Bergquist's and Belisle's sentences and REMAND for recalculation of the sentence based on a revised estimate of the intended loss consistent with this disposition.
 
 
 17
 Defendant Greif's conviction and sentence are AFFIRMED. Defendants Bergquist and Belisle's convictions are AFFIRMED, but their sentences are VACATED AND REMANDED for resentencing.
 
 
 
 *
 Honorable Charles A. Legge, United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3